IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 07-03081-01-CR-S-ODS |
| DARREN KOGER, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. This matter comes before the Court on defendant's Motion to Suppress, to which the government has responded. Defendant filed a Supplemental Motion to Suppress after the hearing.

Defendant asserts that evidence seized as a result of a search of his residence should be suppressed. A suppression hearing was held before the undersigned on March 27, 2007. Defendant was represented by counsel, Donald Cooley and Devon Sherwood, and the government was represented by Assistant United States Attorney James Kelleher.

It is defendant's position that the affidavit in support of the search warrant lacks probable cause to believe that the items listed in the search warrant were at defendant's residence, 1120 E. Latoka, and that the good faith exception is unavailable. Specifically, he contends that the information obtained from the confidential sources does not indicate that the information was based upon personal knowledge, there is no time frame, and there is nothing set out to validate the

1

reliability of the sources. He also asserts that the information about defendant's address was for 1120 East Catalpa, rather than East Latoka, that the trash can could not have been out on the street on the date it was searched, and that there was nothing to tie defendant to the trash that was searched.

The government called Albero Estrada of the Springfield Police Department. In 2006, he was a drug investigator, who began receiving information about Darren Koger. On April 7, 2006, he was informed by a reliable confidential source [CS#1] that defendant was selling large amounts of marijuana in Springfield, and that he typically carried a handgun concealed in his boots. A second reliable confidential source [CS#2] contacted another officer, Travis Wilson, about May 31, 2006, regarding defendant selling large amounts of marijuana from a local tavern. This information was relayed to Officer Estrada. A third confidential source [CS#3] provided information on July 13, 2006, to a third officer, Mike Evans, that defendant was selling large amounts of marijuana from his home at 1120 East Catalpa. During that time, Officer Estrada was investigating defendant "on and off." [Tr. 3]. On September 28, 2006, Officer Estrada testified that he seized "three bags of trash from in front of 1120 East Catalpa." [Tr. 4].[1] In one of the bags, he found an envelope addressed to Rebecca Browning and additional envelopes with the name "Darren Hamden" on them. In the second bag, he found three pieces of material that appeared to marijuana, and which field tested positive for marijuana. He also located documentation from a Greene County Court case relating to Rebecca Browning. He saw a Plymouth Neon parked in the front lawn, which was registered to defendant. The registration information reflected that his address was 1120 East

---

[1]The Court notes, as was also noted by defendant in his reply, that the error in the street name was perpetuated again at the suppression hearing, For reasons stated elsewhere in this report, the Court finds that the testimony adduced at the hearing confirms that defendant's address was 1120 East Latoka, that this is where the trash was seized, and that this is the address for which the search warrant was issued.

2

Latoka. The utility accounts were also in his name for 1120 East Latoka address.

On the search warrant, it indicated that Officer Estrada was driving by 1120 East Catalpa on September 28, 2006. Officer Estrada testified that this was a typographical error, and he was actually driving by 1120 East Latoka. Where the affidavit states that CS#3 indicated that defendant's address was 1120 East Catalpa, that was also a typographical error. Officer Estrada hadn't noticed the errors, not even on the morning of the suppression hearing, until they were pointed out to him. In each of the instances where the search warrant refers to 1120 East Catalpa, the address in question is actually 1120 East Latoka, which is the address that was actually searched. The search warrant was presented to an associate circuit judge on October 2, 2006, who authorized a search warrant for East Latoka. They executed the search warrant on October 4, 2006, at 1120 East Latoka, and seized contraband to include currency, marijuana, and firearms. To the best of his knowledge, other than the error with the Catalpa address being transposed with the Latoka address, there were no other errors that he was aware of in the search warrant.

On cross examination, the witness testified that he prepared the affidavit and read it before he presented it to Judge Powell. Regarding CS#1, who provided information on April 7, 2006, directly to Officer Estrada, the officer agreed that there is nothing in the affidavit itself to suggest where the individual got the information, there is nothing to indicate the information was first-hand, and there is not a time frame. Regarding CS#2, this information was given to another officer, Officer Wilson. Again, Officer Estrada agreed that there is nothing in the affidavit regarding whether that information was first-hand, nor is there anything in the affidavit that makes any reference to the source of information or to a time frame. Additionally, there is nothing in the affidavit to suggest that this source was truthful or reliable or if the source had ever been used

3

before. The officer acknowledged that both CS #1 and # 2 gave this information months before the search warrant was signed. Regarding CS #3, there is nothing in the affidavit regarding the credibility or reliability of the informant, or that he was ever used before. This information was not given directly to Officer Estrada, but rather, to Officer Mike Evans. The officer acknowledged that the affidavit he prepared indicates that CS#3 gave defendant's home address as 1120 E. Catalpa, and that he drove by 1120 E. Catalpa. There is nothing in the affidavit that indicates that anything found in the trash had defendant's name on it. An envelope was found in the trash that bore the address of 224 South Kyle in Republic, which was listed as the home address of Rebecca Browning. The officer agreed, additionally, that there is nothing in the affidavit that indicates that he found anything in the trash with an address of 1120 E. Catalpa or 1120 E. Latoka on it.

When Officer Estrada drove by and looked at the trash, he doesn't remember if there was a lid on defendant's trash can. Several other houses had trash out on September 28, 2006, sitting out for pick-up. On that date, defendant's receptacle was sitting out, and although he doesn't remember exactly where it was placed, it was "alongside the curb in front of the residence somewhere." [Tr. 18]. He did not go up to the house and see if anyone was there, nor did he ask anyone's consent to search the trash. He did not have a search warrant. He did not see anyone put anything in the trash receptacle. Officer Estrada testified that he had been by the address and surveilled the residence on other occasions. He had seen the trash receptacle on other occasions, possibly as early as April of 2006. He had searched the trash on two other occasions, and didn't find anything. He didn't put this information in this affidavit. He had never seen anyone at the house. Although he had seen the vehicle there before at various times, he's not sure of the time frame. When he searched the trash, it was early in the morning, prior to trash pick-up time.

4

On redirect examination, prior to pulling the trash out of the receptacle, the officer testified that he took photographs of the trash, the house, and the vehicle. He identified the photographs, which were admitted into evidence. [Government's Exhibits 2, 3, 4, and 5]. It was his testimony that these photographs indicate that the trash search occurred at 1120 E. Latoka. They show the vehicle, which is registered to defendant, parked in front of the house at E. Latoka, [Exhs. 3 and 4], and the trash receptacle in front of 1120 East Latoka [Exh. 2], from which he pulled the marijuana stems and other items he described in the affidavit. The officer testified that these photographs were all taken of 1120 East Latoka on September 28, 2006.

Regarding the transposition of the words "Catalpa" and "Latoka," Officer Estrada testified that when he referred to E. Catalpa in the affidavit, it was a typographical error. The address he was dealing with at all times during the investigation was 1120 E. Latoka. All the information he had led him to believe that defendant had contraband at 1120 E. Latoka, not on Catalpa.

Defendant called Lisa Karmann to the witness stand. She owns Karmann's Refuse Service in Springfield. She had a written agreement with Darren Koger to become a customer on September 4, 2006, for 1120 E. Latoka. His service is to have his trashed picked up on Monday. Their routes are set, and have been in place since 1998. To her knowledge, trash was never picked up by her service for defendant on a Thursday. Both the residential agreement and the pay history indicate that his trash was picked up on Monday.

On cross examination, the witness admitted the persons might put their trash out on different days than on the day of pick up, and some people leave their trash receptacles out on the curb.

Defendant next called Quentin Crossley to testify on his behalf. On September 28, 2006, he lived at 1116 E. Latoka. He was a next-door neighbor to Darren Koger at that time. He stated that

5

defendant was very adamant about when he put his trash out. He never knew defendant to leave his trash receptacle out on the curb on other than trash day. They always tried to make sure that their trash was away from the street. He did not have the same trash service as defendant, but believed that defendant's trash day was Monday.

Defendant also called Rebecca Koger to the witness stand. She is defendant's wife. In September of 2006, they kept their trash behind a red trailer in their driveway. If a person were looking towards the house from the street, only the red trailer would be visible in the driveway. Trash day was on Monday. In their household, they put the trash out on the curb about 1:00 a.m. on Monday morning, after watching a movie on Sunday night. The trash was picked up early on Monday morning, and she thought it was probably around 6:00 when it was picked up. The family would bring the trash back in around 8:00 a.m. She and her husband never left the trash out on the curb on Thursday, and they did not have a habit of leaving it out on the curb after 8:00 a.m.

On cross examination, Ms. Koger testified that she lived with defendant at the time in question at 1120 East Latoka. At that time, she was also known as Rebecca Browning. Ms. Koger testified that she recognized one of the government's exhibits, which was a photograph of an envelope that had been pulled from the trash with her name on it. She admitted that it was something she would possibly have thrown in the trash. It was her testimony that other items in the photograph would have been something she would have thrown out in the garbage. Ms. Koger also identified a photograph of defendant's vehicle, which was parked in front of her home at 1120 E. Latoka.

The government recalled Officer Estrada to the witness stand for rebuttal testimony. On the occasions when he drove by defendant's residence, he saw, more than once, the trash receptacle left

out after the trash service had been by. He drove by the residence whenever he was on that side of town, and he remembered seeing the trash bin out on consecutive days. He identified a photograph of a piece of trash that he had taken from defendant's trash receptacle on September 28, 2006.

On cross examination, the witness stated that he saw the trash receptacle out in front of defendant's residence between April and August of 2006 over five times.

The law is clear that a warrant is supported by probable cause if, "given all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995), quoting Gates, 462 U.S. at 238. Affidavits should be read in a "common-sense and realistic fashion" and judges must make a practical decision based on the totality of the circumstances. United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (citation omitted). In determining for suppression purposes the validity of a warrant, the court must determine whether there was a "substantial basis" for the probable cause determination. Gates, 462 U.S. at 238. Probable cause may be based on hearsay from a reliable source, and anonymous information that can be independently corroborated may form a probable cause basis. Id. at 244-45. "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." United States v. Etheridge, 165 F.3d 655, 657 (8th Cir. 1999).

Having fully reviewed the testimony at the hearing, the arguments of the parties, the exhibits introduced at the hearing, and the relevant case law, the Court finds that the affidavit in this case was adequate to support a determination of probable cause, despite defendant's assertions to the

7

contrary.

The affidavit indicated that Officer Estrada was aware that three different confidential sources, who wished to remain anonymous for their protection, provided information that defendant was selling large amounts of marijuana in Springfield, Missouri. One of these sources came directly to him, and the other two talked to other officers. These tips were received on April 7, 2006, May 31, 2006, and July 13, 2006. CS #3 told Officer Mike Evans that defendant was dating a 23-year-old female, who Officer Evans identified as Rebecca Browning. Officer Estrada drove by defendant's residence on September 28, 2006, and saw a trash receptacle, which was placed "on the roadway in front of a red trailer that was parked on the driveway." [Government's Exhibit 1, at 4]. Officer Estrada seized three bags of trash; in one he found an envelope with Rebecca Browning's name on it, and two additional envelopes with the name "Darren" handwritten on them; in the second he found marijuana stems, which field-tested positive for marijuana, as well as a note pad with information he traced to Rebecca Browning. He also saw a vehicle on the front lawn, which was registered to defendant with a home address of E. Latoka. Officer Estrada ran a criminal history check on defendant, which revealed past arrests for possession of marijuana, possession of paraphernalia, and unlawful use of a weapon. Police records also indicated that there had been a child custody incident at 1120 E. Latoka on September 30, 2006, where Rebecca Browning was contacted and gave the Latoka address as her home address. Additionally, the officer checked the utility account at the address, which was issued in defendant's name. Based on this information, the officer then sought a search warrant for 1120 E. Latoka, which he obtained on October 2, 2006. He provided a detailed description of the residence at 1120 E. Latoka, as well as its location.

It should be noted at the outset that the Fourth Amendment does not prohibit the warrantless

search and seizure of garbage left for collection outside the curtilage of a home. California v. Greenwood, 486 U.S. 35, 35 (U.S. 1988). There was a great deal of testimony elicited in this case regarding what day of the week defendant's trash was picked up, and what his habits were regarding putting his trash out and retrieving it after pick up. The Court took judicial notice that September 28, 2006, was a Thursday. Defendant states that the trash could not have been put out for pick up on the day it was searched because the officer testified that the trash search was on September 28, and defendant's trash service was for pick up on Monday only.

The Court has carefully reviewed the evidence, and found Officer Estrada's testimony to be credible, and bolstered by the photographs he took on September 28, which show the residence, defendant's vehicle, and the trash receptacles sitting on or near the curb and away from the house. While Ms. Karmann's testimony and that of Mr. Crossley was also credible, to the extent that these witnesses could knowledgeably testify, the Court does not believe that either of them could state with certainty that defendant's trash was not left out on the 28th. Additionally, the testimony of defendant's wife, to the extent it was credible, also establishes that she and her husband left their trash out for pick up, where anyone would have access to it. Officer Estrada stated that he had seen defendant's trash out on the curb on several occasions, sometimes on consecutive days, and that he had searched it two other times. Even if the officer were somehow mistaken about the date on which the trash search occurred, the photographs he took on the day he conducted the search show that the trash was on the curb. The credible evidence establishes that defendant did voluntarily and routinely leave his trash out for collection on or by the curb. That was "for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through [it] or permitted others, such as the police, to do so." Id. at 40. It is commonly known that once placed on the curb, one's

9

trash is basically "up for grabs," anyone is free to go through it, if they so desire, and defendant has "no reasonable expectation of privacy in the inculpatory items that [he] has discarded." Id. at 40. Other than mere speculation, there is nothing to support defendant's implication that because his trash day was Monday, and the 28th was a Thursday, the officer must have searched trash that was not in a public area.

Additionally, it is clear that evidence gleaned from the trash search corroborated evidence acquired from three confidential sources regarding defendant's involvement with selling marijuana. The trash receptacle contained material that tested positive for marijuana, and it contained mail that was linked to defendant at 1120 E. Latoka through his wife, Rebecca Browning. Additionally, the vehicle parked at the residence was registered to defendant, and utility records indicated that he paid the utilities at that address. The confidential tips received from three different sources focused on sales of marijuana by defendant. The trash search tended to show that the confidential tips were "reliable in [their] assertion of illegality. . . ." Florida v. J.L., 529 U.S. 266, 272 (2000), quoted by Doran v. Eckold, 409 F.3d 958, 966 (8th Cir. 2005). The Court finds, therefore, that the trash search was significant corroborating evidence, which supported the tips from three different sources, to link defendant and marijuana to the residence at 1120 East Latoka.

Regarding the errors in the affidavit about the correct address for defendant's residence, Officer Estrada credibly testified that these were simply typographical or clerical errors. The test for determining the sufficiency of the description of the place to be searched is whether the place is described with sufficient particularity so as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched. United States v. Gitcho, 601 F.2d 369, 371 (8th

10

Cir.) (citations omitted), cert. denied, 444 U.S. 871 (1979). Thus, where a search warrant contained information that particularly identified the place to be searched, the court has found the description to be sufficient even though it listed the wrong address. United States v. McCain, 677 F.2d 657, 660-61 (8th Cir.1982).  Moreover, where the same officer both applied for and executed the warrant, a mistaken search is unlikely. McCain, 677 F.2d at 661. In this case, the affidavit in support of the search warrant and the warrant itself both provide a full and complete physical description of the premises at 1120 E. Latoka, and the location of that residence. Officer Estrada testified that he corroborated the information provided by one of the confidential sources regarding defendant's address, by driving by the East Latoka address.  He confirmed that the vehicle that was parked there was registered to defendant, and confirmed that he lived there through utility records.  There has been no showing, additionally, that there were any deliberate falsehoods that would render the search warrant invalid.  Rather, the error regarding the address was clearly an inadvertent typographical error where the name "Catalpa" was transposed for "Latoka."  Officer Estrada's testimony was entirely credible regarding his preparation of the affidavit, and there is no basis to conclude that the information included in the affidavit was not truthful.  Therefore, the Court finds the warrant description of the address to be searched sufficient and the warrant valid.  Based on the totality of the circumstances, the Court is satisfied that there was probable cause to support the issuance of the search warrant.  Therefore, the Court finds that the motion to suppress on this basis must be denied.

Even assuming, however, that the warrant in this case was not based on probable cause and found to be defective, the Court finds that the good faith exception enunciated in United States v. Leon, 468 U.S. 897, 922-23 (1984), would apply.  It is clear that Officer Estrada relied
11

in good faith on what he believed to be a valid search warrant, which was reviewed and signed by a neutral magistrate. There is nothing to suggest that the affidavit was so lacking in indicia of probable cause that the Leon good faith exception should not apply. When making a good faith assessment, the Court must examine the totality of the circumstances, including what the officer knew but did not include in his affidavit. United States v. Chambers, 987 F.2d 1331, 1335 (8th Cir. 1993). Having reviewed the record as a whole, with the benefit of the officer's testimony at the hearing, it is clear that Officer Estrada reasonably relied on the validity of the warrant. It was objectively reasonable for the officer to have believed that probable cause existed in this case. Accordingly, it will be recommended that the motion to suppress should be denied.

For the foregoing reasons, it will be

RECOMMENDED that defendant's Motion to Suppress be denied.

/s/ James C. England
JAMES C. ENGLAND, CHIEF
UNITED STATES MAGISTRATE JUDGE

DATE:      04/17/08